IN THE DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| JARRETT HOGUE and GELYNE GAMBITO,<br><br>Plaintiffs,<br><br>vs.<br><br>PACIFIC COMPOSITES, INC. dba SHIPRIGHT! and BOATSHOP, AMANDA YOUNG, CHRISTOPHEAR YOUNG, MOYLAN'S INSURANCE UNDERWRITERS, INC. and, in her personal capacity JOANNA FULLERTON,<br><br>Defendants. | CIVIL CASE NO. 16-00041<br><br>**REPORT AND RECOMMENDATION**<br>re Motion to Dismiss Counts III, IV and VII of the Complaint (ECF No. 13) |

This matter is before the court on a Motion to Dismiss Counts III, IV and VII of the Complaint (the "Motion to Dismiss"), *see* ECF No. 13, filed by defendants Pacific Composites, Inc. ("PCI"), Amanda Young, Christophear Young and Moylan's Insurance Underwriters, Inc. ("Moylan's Insurance") and subsequently referred to the below-signed Magistrate Judge.[1] *See* ECF No. 35. Therein, the Defendants sought dismissal of (1) Counts III and IV because said causes of action fail to state a claim under Title VII (2) Count VII on the basis that Plaintiff Gelyne Gambito ("Gambito") failed to exhaust her administrative remedies. On September 20, 2016, the court heard argument on the motion and gave the parties until October 21, 2016, to file an additional brief addressing the court's exercise of supplemental jurisdiction. Having reviewed all pertinent pleadings filed herein and relevant case law, as well as having heard argument from counsel, the court hereby issues this Report and Recommendation.

---

[1] These movants shall collectively be referred to as the "Defendants."

# BACKGROUND

1. Procedural History

This action was filed on May 9, 2016, and asserts employment discrimination and retaliation claims, as well as claims for wrongful discharge, wage and hour violations, and insurance bad faith. According to the Complaint, pursuant to 28 U.S.C. § 1331 this court has federal question subject matter jurisdiction over this mater since the action was brought pursuant to Title VII of the Civil Rights Act of 1964, as amended. *See* Compl. at ¶9, ECF No. 1. The Complaint also asserts that this court may exercise supplemental jurisdiction over the claims based on Guam law. *Id.*

On July 8, 2016, the Defendants filed an Answer, *see* ECF No. 12, denying any wrongdoing and asserting various defenses (*e.g.*, lack of subject matter jurisdiction, lack of supplemental jurisdiction, failure to state a cause of action and unclean hands). Said Defendants also filed the instant Motion to Dismiss. ECF No. 13.

On July 29, 2016, Plaintiffs Jarret Hogue and Gelyn Gambito (collectively, the "Plaintiffs") filed an Opposition to the Motion to Dismiss. *See* ECF No. 29.

On August 12, 2016, the Defendants filed a Reply to the Plaintiffs' Opposition. *See* ECF No. 32. The Defendants also filed a Request for Oral Argument. *See* ECF No. 33.

On August 15, 2016, the Chief Judge referred the Motion to Dismiss to the below-signed magistrate judge. *See* ECF No. 35.

At the scheduling conference held on August 15, 2016, the Plaintiffs' counsel requested permission to file exhibits that should have been attached to his Opposition to the Motion to Dismiss. *See* Minutes (Aug. 15, 2016), ECF No. 38. The court granted the request and permitted the Defendants to file a supplemental reply if necessary. *Id.*

On August 15, 2016, the Plaintiffs filed a Submission of Supplemental Exhibit and Declaration of John Richard Bordallo Bell. *See* ECF No. 37.

On August 29, 2016, the Defendants filed a Supplemental Reply. *See* ECF No. 40.

On September 20, 2016, the parties came before the court to present argument on the Motion to Dismiss. *See* Minutes, ECF No. 44. The court took the motion under advisement but gave the parties until October 21, 2016, to file additional briefs addressing the court's exercise of

supplemental jurisdiction over the local law claims.

On October 21, 2016, both parties filed their supplemental briefs as permitted. *See* ECF Nos. 45 and 47.

2. Factual Background[2]

According to the Complaint filed on May 9, 2016, the Plaintiffs are currently unmarried but have been living together in a committed relationship since 2009. Compl. at ¶3, ECF No. 1. Plaintiffs currently reside in California. Compl. at ¶¶1-2. Defendant PCI is a maritime repair and supply shop incorporated under the laws of Guam, with its principal place of business in Guam. *Id.* at ¶4. Defendant Amanda Young is alleged to be both the President and an employee of PCI, while defendant Christophear "Chris" Young, is the Secretary, Treasurer, Chief Operating Officer and an employee of PCI. *Id.* at ¶¶5-6.

The Complaint alleges that in December 2013, Hogue, while living in California, began email and telephone discussions with Chris Young about potential employment with PCI. *Id.* at ¶11. The negotiations continued over several months, and in May 2014, both Chris and Amanda Young offered Hogue a car to use "indefinitely" while employed, as well as a sailboat to live on. *Id.* In late March 2015, Hogue agreed to relocate to Guam and agreed to terms of employment which supposedly included paying back half of approximately $1,600 in travel costs, a $12.50 hourly wage and indefinite use of the Youngs' vehicle. *Id.* at ¶15. Hogue arrived on Guam on April 12, 2015, and began working the following day. *Id.* at ¶16.

About one week later, the vehicle the Youngs provided to Hogue began breaking down, so Chris Young suggested that Hogue move to Agat so that it would be convenient for Chris Young to give Hogue rides to and from work every day. *Id.* at ¶17. Hogue agreed and moved to Agat. *Id.*

Keith Quintanilla, the shop manager, allegedly shunned Hogue from the start and purportedly told Hogue soon after Hogue started that his job should have gone to someone local. *Id.* at ¶18. Hogue told Chris Young about this and also repeatedly asked Chris Young to talk to his employees about discrimination, but Chris Young allegedly took no action and told Hogue to get used to it. *Id.*

---

[2] The facts set forth herein are primarily taken from the Plaintiffs' Complaint.

at ¶19.

Sometime in mid-April 2015, Hogue claims he worked 10 days straight with no day off, approximately 13-18 hours each day with no more than an hour break. *Id.* at ¶21. The Complaint asserts that PCI's policy was to deduct wages from all employees for a meal break whether the employee actually took the break or not. *Id.* at ¶21.

Hogue asserts that for the first two weekly pay periods, he was paid via a business check without any breakdown for taxes or other deductions. *Id.* at ¶22. With all the overtime he had worked, Hogue estimated he should have been paid $2,650, but he was denied approximately $1,275 in earned wages. *Id.*

On May 7, 2015, Hogue claims he received a raise from $12.50 hourly to $15 hourly. *Id.* at ¶24.

On or about June 15, 2016, Gambito began working at PCI for $10 hourly as a sales associate. *Id.* at ¶27. The Complaint alleges that PCI paid Gambito "off the books" such that Gambito was denied approximately $500 in earned wages during Gambito's first month of employment. *Id.*

The Complaint further asserts that during Friday meetings, the Plaintiffs brought up several concerns about the safety of PCI's worksite, but no progress was made. *Id.* at ¶28.

The Plaintiffs claim that in mid-July 2015, Gambito worked approximately 3-4 hours a day in addition to her regularly scheduled hours for which she was not compensated. *Id.* at ¶29.

PCI thereafter began to pay Gambito "on the books" as an hourly employee. *Id.* at ¶30. Amanda Young then gave Gambito management duties and the title of "Assistant Administrator" but without any pay increase or a fixed salary. *Id.* Gambito objected and Amanda Young promised to revise Gambito's job description but never did so. *Id.*

Amanda Young allegedly told Gambito that she (Amanda Young) should have hired a local and regretted hiring Hogue, a "statesider," because of his "stateside money grubbing vibe." *Id.* at ¶31. The Complaint alleges Amanda Young further stated that Hogue would not succeed at PCI because Hogue had "created waves." *Id.* at ¶31.

Plaintiffs continued to complain to Chris Young about employees showing up late and disappearing to smoke marijuana during shifts. *Id.* at ¶32. Chris Young also allegedly bought beer

for the crew to drink while they worked. *Id.*

Al Sizemore, another PCI employee allegedly mis-classified as an "independent contractor," began sexually harassing Gambito and told her about a sexual dream he had about her in July 2015. *Id.* at ¶35. The harassing comments continued into September 2015. *Id.* at ¶¶38-39.

Gambito also made complaints about dust, dirt and fumes getting into the merchandise store, which was connected to the workshop. *Id.* at ¶¶33 and 37. Gambito alleges the dust and fumes were so bad that she had to leave work early, and when Chris Young insisted that Gambito remain at work despite the dust and fumes, Gambito suffered migraines and vomiting. *Id.* at ¶37. PCI allegedly refused to document any of these incidents. *Id.*

On September 28, 2015, Hogue notified Chris Young over the telephone about Sizemore's harassment of Gambito. *Id.* at ¶41. Chris Young remained silent. *Id.* The following day, Gambito gave her two-week notice to Amanda Young while they were both outside the Plaintiffs' home in Agat. *Id.*

On September 30, 2015, PCI gave Hogue a paycheck covering the period September 16-25 for 81.25 hours of work over the 9-day period without any overtime pay. *Id.* at ¶42. The following day, Hogue was fired by PCI. *Id.* at ¶43. Gambito was also terminated on that day, allegedly based on the unprofessional manner in which she gave her two-week notice. *Id.* at ¶43.

On October 27, 2015, Plaintiffs both filed whistle-blower complaints with the federal Occupational Safety and Health Administration ("OSHA"). *Id.* at ¶44. Additionally on said date, Gambito filed and served PCI with a statutory notice of work injury. *Id.*

On October 29, 2016, Amanda Young allegedly met with Joanna Fullerton,[3] who advised Amanda Young to process the work injury claim with her insurance adjuster, Gina Valentine, at Moylan's Insurance. *Id.* at ¶46. The Complaint alleges that Amanda Young, Fullerton and Moylan's Insurance subsequently conspired to sweep Gambito's claim under the rug. *Id.*

On November 15, 2015, an OSHA inspection was conducted at the PCI worksite. *Id.* at ¶53.

In December 2015 and January 2016, Ms. Valentine allegedly represented that Moylan's

---

[3] Ms. Fullerton is the Guam Worker's Compensation Commission Administrator.

Insurance had no intention of processing Gambito's claim because Amanda Young refused to cooperate with the claims notification process. *Id.* at ¶54. Gambito thus sought her own evaluation and treatment in California. *Id.* Medical tests revealed "a cyst on Gambito's pineal gland . . . despite no head injury during her lifetime." *Id.* These medical reports also indicated that epoxy and other chemicals used at PCI may have caused nervous system damage and Gambito's headaches. *Id.* at ¶55.

After having filed race, sex and national origin discrimination and retaliation complaints with the EEOC, the Plaintiffs received "Right to Sue" letters on February 12, 2016. *Id.* at ¶56. As a result, the Plaintiff brought the instant action alleging the following claims:

1. Count I - Hogue's Wrongful Discharge in Violation of Public Policy,
2. Count II - Gambito's Constructive Discharge in Violation of Public Policy,
3. Count III - Race and National Origin Discrimination and Retaliation Against Hogue and Retaliation Against Gambito under Title VII and 42 U.S.C. § 1981,
4. Count IV - Title VII Discrimination and Retaliation Against Gambito on the Basis of Gender and Gambito's Engaging in Protected Activity,
5. Count V - Wage and Hour Violations of Hogue's Rights Under Guam Law,
6. Count VI - Wage and Hour Violations of Gambito's Rights Under Guam Law,
7. Count VII - Gambito's Claim for Insurance Bad Faith Against Moylan's Insurance, and
8. Count VIII - Gambito's Claim for Intentional Infliction of Emotional Distress Against Fullerton in her Personal Capacity.[4]

## LEGAL STANDARD

The Defendants seek dismissal on two grounds, and the applicable legal standards that apply to the instant motion are as follows:

///

---

[4] Count VIII is no longer viable since the Chief Judge granted defendant Fullerton's Motion to Dismiss and dismissed said claim with prejudice. *See* Order (Sept. 13, 2016), ECF No. 42.

### A.     Rules 12(b)(6) and 56

The Defendants seek dismissal of Counts III and IV, asserting that said claims fail to state a claim under Title VII. Because the Defendants rely on evidence outside the Complaint, pursuant to Rule 12(d), the motion is converted to one for summary judgment under Rule 56.[5]

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of a claim for "failure to state a claim upon which relief can be granted[.]" Review of a Rule 12(b)(6) motion is generally limited to the contents of the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). If matters outside the pleadings are considered by the court, the Rule 12(b)(6) motion is treated as one for summary judgment. *See Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir.1997). Courts may, however, "consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir.1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Pursuant to Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

///

---

[5] In it's entirety, Rule 12(d) states: "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

B. Rule 12(b)(1)

Defendants also seek dismissal of Count VII of the Complaint pursuant to Rule 12(b)(1) on the basis that Gambito failed to exhaust her administrative remedies.

Rule 12(b)(1) allows the court to dismiss a claim for lack of jurisdiction. "It is a fundamental principle that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Thus, the plaintiff bears the burden of establishing subject matter jurisdiction. Federal subject matter jurisdiction must exist at the time the action is commenced. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). A court must presume lack of jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (The party seeking to invoke federal court jurisdiction has the burden of establishing that jurisdiction is proper.).

A party bringing a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the Court's consideration. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual"). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating a facial attack to jurisdiction, the court must accept the factual allegations of the complaint as true. *See Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014). However, legal conclusions in the complaint are not accepted as true, even if they are cast as factual allegations. *See id.*

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. "With a factual Rule 12(b)(1) attack . . . a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. It also need not presume the truthfulness of the plaintiff['s] allegations." *White*, 227 F.3d at 1242 (internal citation omitted); *see also Thornhill Publishing v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.1979).

In the context of a motion to dismiss under Rule 12(b)(1), the court should dismiss without

leave to amend if the party could not cure the jurisdictional defect by amendment. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Dismissal without leave to amend is improper "unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998) (quoting *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)).

## DISCUSSION

1.  Dismissal of Title VII Actions in Counts III and IV

The Defendants seek dismissal of the Title VII claims in Counts III and IV pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Specifically, the Defendants argue that the Plaintiffs may not maintain a Title VII claim against Defendant PCI because PCI does not meet the statutory definition of an "employer" under Title VII. *See* 42 U.S.C. § 2000e(b) (defining "employer" for purposes of Title VII as entities employing "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or p4receding calendar year"). The Defendants have submitted evidence that PCI did not have at least 15 employees on its payroll for each working day of at least 20 weeks over the course of 2014 or 2015. *See* Christophear Young Decl., ECF No. 14. According to said declaration, PCI only had 11 employees in 2015. *Id.* at ¶5.

Plaintiffs do not dispute the Defendants' assertions, nor have they asked for additional discovery regarding this issue. Instead, the Plaintiffs assert that because Count III asserts discrimination and retaliation claims under both Title VII and 42 U.S.C. § 1981, the Defendants' request must be denied as to the Section 1981 claims.

Based on the uncontroverted evidence presented, the below-signed judge recommends the Chief Judge dismiss the Title VII claim in Count III and dismiss Count IV in its entirety.

2.  Supplemental and Diversity Jurisdiction

At the hearing held on September 20, 2016, the court questioned the Plaintiffs' counsel as to whether Counts I and II were causes of action arising under federal or Guam law, and he confirmed that said counts were brought under Guam law. The court then stated that after dismissing the Title VII claims from Counts III and IV, the Plaintiffs were left with only the Section 1981 claims

in Count III as the only federal claim, with all other counts arising under Guam law. Thus, the court inquired whether this court should decline to exercise supplemental jurisdiction over the local law claims pursuant to 28 U.S.C. § 1367(c), particularly the claims alleged in Counts V through VII which raised "novel or complex issue[s]" of Guam law, *id.*, and did not appear to be "so related" to the only remaining federal claim "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Because the court raise the matter *sua sponte*, it permitted the parties to file post-hearing briefs to address this issue.

In their supplemental brief, the Plaintiffs conceded that "case law generally does not support the [c]ourt's exercise of supplemental jurisdiction over the insurance bad faith claim based on its factual relation to the 'federal questions' under Title VII, etc." Pls. Supp. Br. at 3, ECF No. 47. However, the Plaintiffs argued a new basis for this court's exercise of jurisdiction over all causes of action, particularly that the court has original jurisdiction over all claims based on diversity jurisdiction under 28 U.S.C. §1332(a).

Pursuant to 28 U.S.C. § 1332, the court has original jurisdiction over civil actions where (1) the amount in controversy exceeds $75,000, exclusive of interest and costs, and is (2) between citizens of different states. In reviewing the Complaint, however, the court notes that the allegations contained therein only assert the *residence* of the Plaintiffs and the individual defendants, and does properly address the parties' *citizenship* in any particular state or territory. Additionally, it is not facially evident from the Complaint that more than $75,000 is in controversy, although the Plaintiffs so allege in their supplemental brief. Pls. Supp. Br. at 2-3, ECF No. 47. Because the court does not believe that it would be futile for the Plaintiffs to correct the defects in their jurisdictional allegations, the court recommends the Chief Judge allow the Plaintiffs to amend their complaint to allege facts sufficient to establish diversity jurisdiction.

3.      Dismissal of Count VII

The Defendants also seek dismissal of Count VII which assert a cause of action against Moylan's Insurance for insurance bad faith. The Defendants argue that Plaintiff Gambito failed to exhaust her administrative remedies prior to bringing her claim, and more specifically the Defendants argue that Gambito's exclusive remedy for the allegations of Count VII is under Guam

Worker's Compensation Act.

### A. Whether Moylan's Insurance is the Proper Party

As a threshold matter, the Defendants first argue that Moylan's Insurance is not the insurance carrier liable under Guam's Worker's Compensation law. According to the Defendants' motion, Moylan's Insurance is "a general agent of First Net Insurance Company ("First Net") which is the 'carrier.'" Mot. to Dismiss at 10, ECF No. 13.

Pursuant to Guam statutes, every employer is required to secure the payment of compensation provided under the Worker's Compensation law

> (1) By insuring and keeping insured the payment of such compensation with any stock corporation or mutual association authorized by the [Worker's Compensation] Commission to transact the business of workers' compensation insurance in the Territory [or]
> (2) By obtaining and keeping in force guarantee insurance with any company authorized by the Commission to do such guarantee business within the Territory.[6]

22 GUAM CODE ANN. § 9133(a).

Additionally, an insurance carrier who provides coverage to an employer under Section 9133(a) may step into the shoes of the employer and be required to discharge the employer's obligation under Guam's Worker's Compensation law. *See* 22 GUAM CODE ANN. § 9137.[7]

---

[6] There is a subparagraph (3) but that is only applicable if the government of Guam is the employer.

[7] This statute provides:

§ 9137. Substitution of Carrier for Employer.

In any case where the employer is not a self-insurer, in order that the liability for compensation imposed by this Title may be most effectively discharged by the employer, and in order that the administration of this Title in respect of such liability may be facilitated, the Commission shall by regulation provide for the discharge, by the carrier for such employer, of such obligations and duties of the employer in respect of such liability, imposed by this Title upon the employer, as it considers proper in order to effectuate the provisions of this Law. For such purposes (1) notice to or knowledge of the employer of the occurrence of the injury shall be notice to or knowledge of the carrier, (2) jurisdiction of the employer by the Commissioner, the Commission, or any court under this Title shall be jurisdiction of the carrier, and (3) any requirement by the Commissioner, the

Moylan's Insurance argues that because it is not the "carrier" who is obligated to step into the shoes of the employer here (PCI), then the court lacks jurisdiction over it and on that basis Moylan's Insurance should be dismissed from this suit with prejudice.

In response, the Plaintiffs note that Defendants have not provided any evidence that First Net is in fact the correct carrier. However, if the court finds otherwise, the Plaintiffs request an opportunity to amend the complaint to include First Net.

The Plaintiffs are correct in noting that Defendants have provided no evidence that First Net is the insurance carrier while Moylan's Insurance is simply First Net's agent. The Defendants have not filed a declaration from a representative of Moylan's Insurance or First Net as to who is the actual worker's compensation insurance carrier. Instead, the bare assertion in the Defendants' motion is that "[t]his information is readily available . . . on Moylan's website. *See* www.moylansinsurance.com." Mot. to Dismiss at 10, ECF No. 13. In contrast to Defendants' assertion, the Complaint alleges that Moylan's is the "insurance adjuster" for the worker's compensation claim. *See* Compl. at ¶46, ECF No. 1 ("Amanda Young met with Fullerton, who advised Amanda Young to process the claim via her *insurance adjuster*, Gina Valentine at Moylan's Insurance.").

The court has visited the website noted by the Defendants, and the information regarding Moylan's Insurance's relationship with First Net is not "readily available" on said website. Additionally, in the various communications between Moylan's Insurance and Plaintiffs' counsel about the processing of Gambito's claim, Moylan's Insurance has never indicated that First Net is the actual carrier and that Moylan's Insurance was acting as First Net's agent. *See* Pls. Opp'n, Exs. 4 and 7, ECF No. 29. Given the lack of evidence, the court recommends that the Chief Judge deny the motion to dismiss Moylan's Insurance from this action. However, if Moylan's Insurance is able to provide Plaintiffs with evidence that in fact shows that First Net is the actual worker's compensation insurance carrier, then the court should permit the Plaintiffs to amend their Complaint

---

Commission, or any court under any compensation order, finding, or decision shall be binding upon the carrier in the same manner and to the same extent as upon the employer.

to include First Net.

### B. Whether Worker's Compensation Exclusivity Provision Bars Claim

The next issue is whether the exclusivity provision of Guam's Worker's Compensation law bars the claim arising out of the allegation that despite its knowledge of Gambito's work injury, Moylan's Insurance "refused to process Gambito's claim . . .[because] Amanda Young refused to cooperate in providing Moylan's insurance with such notice in writing." Compl. at ¶95, ECF No. 1.

At issue here is the interpretation of Title 22, Guam Code Annotated, Section 9106. In pertinent part, Guam's Worker's Compensation law provides that

> The liability of an employer prescribed in § 9104 **shall be exclusive and in place of all other liability of such employer to the employee**, his legal representative, husband or wife, parents, dependents, next of kin, any and all third party claimants who may generally possess a claim for contribution among joint tortfeasors against the employer, or anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death; provided that, if an employer fails to secure payment of compensation as required by this Title, an injured employee or his legal representative, in case death results from the injury, any elect to claim compensation under this Title, or to maintain an action at law or in admiralty for damages on account of such injury or death.

22 GUAM CODE ANN. § 9106 (emphasis added).

The Defendants argue that pursuant to Section 9106, Gambito's exclusive remedy for the allegations of Count VII is Worker's Compensation because the Worker's Compensation Commission ("WCC") is vested with jurisdiction to investigation a failure to make payments. *See* 22 Guam Code Ann. §9115(h).[8]

Under Guam's Worker's Compensation scheme, an employee is required to give "*[n]otice*

---

[8] Section 9115(h) states:

The Commissioner (1) may upon his own initiative at any time in a case in which payments are being made without an award and (2) shall in any case where right to compensation is controverted, or where payments of compensation have been stopped or suspended, upon receipt of notice from any person entitled to compensation, or from the employer that the right to compensation is controverted, or that payment of compensation has been stopped or suspended, make such investigation, cause such medical examinations to be made, or hold such hearings, and take such further action as he considers will properly protect the rights of all parties.

of an injury . . . for which compensation is payable . . . within thirty (30) days after the date of such injury . . . (1) to the Commissioner and (2) to the employer." 22 GUAM CODE ANN. § 9113(a) (emphasis added). Guam law further states: "The right of compensation for disability . . . under this Title *shall be barred unless a claim therefor is filed* within one (1) year after medical knowledge of disability . . . . The time for filing a claim shall not begin to run until the employee or beneficiary becomes aware of the relationship between the injury or death and the employment." 22 GUAM CODE ANN. § 9114(a) (emphasis added). "Such claim shall be filed with the Commissioner." *Id.* "Compensation under this Title shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer." 22 GUAM CODE ANN. § 9115(a). "The Commissioner shall have full power and authority to hear and determine al questions in respect to such claim." 22 GUAM CODE ANN. § 9120(a).

In this case, on October 27, 2015, Plaintiff Gambito filed a Form GWC 201 – Notice of Employee's Injury/Illness or Death (the "Form 201 Notice") with her employer (PCI) and the Guam Department of Labor ("GDOL"). *See* Compl. at ¶44, ECF No. 1, and Pls. Opp'n, Ex. 1, ECF No. 29-1. Attached to the Form 201 Notice was a set of "facts" (consisting of 47 paragraphs)[9] signed by the Plaintiffs and their counsel. *Id.* At the top of this form appears the following admonition:

> INSTRUCTIONS: This form may be used by the Employee to file a NOTICE of an injury, illness or in the case of death, by Employee's representative. No benefits need be paid without this notice. Notice shall be given to the Commissioner and to the Employer by delivery or to the last known place of business. 22 GCA 9113. PLEASE PRINT OR TYPE.
> **\*\* THIS IS NOT A CLAIM \*\***

*Id.* (emphasis in original).

As noted by the Defendants, the Form 201 Notice "does not tell the WCC what exactly it is [Gambito] is 'claiming.'" Reply at 2, ECF No. 32. The Defendants assert that they "should not be expected to discern [what Gambito is claiming] especially when she has never received any formal medical treatment." *Id.* They further argue that "Gambito cannot expect Moylan's Insurance to start issuing payments to her without first knowing what she is claiming and having determined her

---

[9] These "facts" essentially track the allegations in the Complaint.

injury, if any, was related to her job as a store clerk; a job she held for three (3) months." *Id.*

On August 15, 2016, the Plaintiffs filed a Supplemental Exhibit ("Exhibit 7a"), which was a letter from a Dr. Michael Rudolph dated January 6, 2016.[10] *See* ECF No. 37. Exhibit 7a was the "doctor's report" referenced and attached to an email dated March 21, 2016, from Plaintiffs' counsel to Gina Valentine at Moylan's Insurance. *See* Pls. Opp'n, Ex. 7-4, ECF No. 29-7. The email to Ms. Valentine asserted that Moylan's Insurance had "been well aware of the injury . . . since at least October of 2015, yet [Moylan's Insurance has] refused to do so much as investigate the claim." *Id.*

In their Supplemental Reply, among other arguments, the Defendants again assert that the claim against Moylan's Insurance is premature because Gambito never filed a "claim" for Moylan's Insurance to deny. Supp. Reply at 4, ECF No. 40. They further contend that once Gambito files a claim, she "must allow her claim to work its way through the WCC before brin[g]ing separate legal action in any court." *Id.*

Based on the other arguments raised in the Supplemental Reply, it appears that PCI is contesting Gambito's right to compensation at all. *Id.* at 3-4. Under the Worker's Compensation scheme, "[i]f the employer controverts the right to compensation, he shall file with the Commissioner, on or before the fourteenth (14th) day after he has knowledge of the alleged injury . . ., a notice in accordance with a form prescribed by the Commission, stating that the right to compensation is controverted . . . and the grounds upon which the right to compensation is controverted." 22 GUAM CODE ANN. § 9115(d). Based on the materials filed herein, it is unclear whether PCI has filed the required form controverting Gambito's right to compensation. If PCI has filed the required form challenging Gambito's claim, then the WCC must next "make such investigation, cause such medical examinations to be made, or hold such hearings, and take such further action as he considers will properly protect the rights of all parties." 22 GUAM CODE ANN. § 9115(h).

---

[10] Although the letter is entitled "Comprehensive Internal Medicine Report," the letter states that it "should not be construed as a complete and comprehensive physical examination" of Gambito "but only as an evaluation of the specific body parts, systems or conditions related to [her] injury." *Id.*

The court concurs with the Defendants' assertion that Gambito has only filed a *notice* and not an actual *claim* by the filing of the Form 201 Notice. Pursuant to Guam law, Gambito has no right to compensation under the Worker's Compensation scheme until she files a *claim* with the Commissioner. At the September 20th hearing, counsel for the Plaintiffs asserted it would be futile to require Gambito to file a claim with the WCC. Counsel stated that this assertion was based on his past history with the WCC, and he recounted his frustrating experience with other clients who had sought redress from the WCC. Despite such allegations, the court can not consider counsel's statements since they are merely argument and not made under penalty of perjury in the form of a declaration. It is simply not sufficient to merely file a Notice; Gambito must file a claim as required by statute, and the court finds that the Complaint does not contain sufficient allegations to establish that pursuing administrative remedies available under Guam's Worker's Compensation law would be futile.

As for the issue regarding Section 9106's exclusivity provision, the Plaintiffs appear to concede that a plain reading of the statute "reveals that *employers*, and not insurance carriers, are excused from liability so long as such employer furnishes workers compensation insurance coverage to its employees." Pls. Opp'n at 3, ECF No. 29. The Plaintiffs argue, however, that Defendants have provided no authority "that such exclusivity extends to insurance companies within the terms of Guam's workers compensation statute." *Id.* at 4.

Contrary to the Plaintiffs' argument, the court notes that the exclusivity of the Worker's Compensation remedy applies to both the employer as well as the insurance carrier. The statute specifically defines "employer" as to include "his insurer as far as applicable." 22 GUAM CODE ANN. § 9103(j).[11] Thus, pursuant to this definition, Section 9106's exclusivity provision applies to

---

[11] This subparagraph provides in its entirety:

(j) Employer. This term, unless otherwise stated, includes any body of persons, corporate or unincorporated, public or private, and the legal representative of a deceased employer. It includes the owner or lessee of premises, or other person who is in fact the proprietor, or operator of the business carried on there but who by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed. **If the employer is insured it includes his insurer as far as applicable.**

22 GUAM CODE ANN. § 9103(j) (emphasis added).

Moylan's Insurance as well as to PCI.

In addition to the statutory definition of "employer," the applicability of Section 9106's exclusivity provision to insurance carriers is supported by the cases cited by the Defendants.

First, in *Amerault v. Intelcom Support Servs., Inc.*, 2004 Guam 23 (Guam 2004), 2004 WL 2938912, the Guam Supreme Court acknowledged that "Guam's worker's compensation laws are substantially similar to the federal Longshore and Harbor Workers' Compensation Act ("LHWCA") which itself was modeled after the New York statutory scheme regarding workers' compensation. Therefore, we consider case law interpreting provisions of the LHWCA that are similar to provisions of Guam's worker's compensation law similarly persuasive." *Id.* at n.5 (citations omitted).

In *Amerault*, the plaintiff was injured during the course of his employment, and he filed a claim with Guam's WCC. *Id.* at ¶2. The employer began making payments to the plaintiff through it's worker's compensation insurance provider, pending the WCC's issuance of a compensation order. *Id.* Before the merits of the plaintiff's claim could be heard, the WCC issued a compensation order requiring the employer to continue providing medical treatment to the plaintiff. *Id.* Following the merits hearing, the WCC issued a second compensation order to address medical care issues raised by the plaintiff and reiterated the employer's continued obligation to provide plaintiff medical treatment. *Id.* at ¶3. The plaintiff eventually brought suit and claimed his employer and the insurance provider failed to provide him with medical treatment. *Id.* at ¶4. The plaintiff alleged three causes of action: breach of statutory duty, negligence and bad faith. *Id.* The Superior Court of Guam granted the motion to dismiss the plaintiff's complaint for lack of subject matter jurisdiction based on worker's compensation exclusivity. *Id.* at ¶6. On appeal, the plaintiff asked the Supreme Court of Guam to reverse the trial court, but the appellate court declined to do so. The Guam Supreme Court acknowledged that it had "in a recent consideration of the exclusivity provision of the worker's compensation law, . . . articulated the continued viability of the exclusivity provision, stating that '[i]f the employer has obtained the coverage prescribed by the statute then the liability of the employer for compensation is exclusive and in place of all other liability of such employer to the employee.'" *Id.* at ¶12.

The plaintiff argued on appeal that because the exclusivity provision specifically states that

Jarret Hogue and Gelyne Gambito v. Pacific Composites, Inc. dba Shipright! and boatSHOP, et al.., Civil Case No. 16-00041
Report and Recommendation re Motion to Dismiss
page 18 of 20

it applies to an employer's liability for compensation," and because payments for medical care are not considered compensation under the worker's compensation statutory scheme, the exclusivity provision does not apply to claims related to such medical payments. *Id.* at ¶13. The Supreme Court of Guam examined the entire statutory scheme and found that plaintiff's argument to be without merit, stating

> We find that the plain meaning of exclusivity provision found in section 9106 is clear when considered within the entire statutory scheme. When coverage is provided under section 9104, an employer must pay compensation to an employee. 22 GCA § 9104(a). The very next section, 9105, requires that every employer must secure payment of the compensation payable under sections 9108, 9109 and 9110 for his employees. 22 GCA § 9105. This includes medical care, which is provided for by section 9108. 22 GCA § 9108. Based on these various sections, when read together, we find that the exclusive "liability of an employer" under section 9106 is for the coverage required by section 9105 when provided for by section 9104. We therefore find that the only rational interpretation of section 9105 is that when coverage exists under section 9104 every employer is required to provide compensation for his employees for the medical care required by section 9108.

*Id.* at ¶15.

Turning then to New York's interpretation of the worker's compensation exclusive remedy provision, said courts have recognized that "[t]o the extent that an insurance carrier is merely acting in the employer's stead in processing claims, it, too, may assert the exclusivity of the statutory remedies in defense to a negligence action asserted by an injured worker." *Burlew v. American Mut. Ins. Co.*,[12] 472 N.E.2d, 682, 684 (N.Y. 1984). The *Burlew* court also stated that a plaintiff was required to show that an insurance carrier's conduct was "so extreme and outrageous as to exceed all bounds of decency or to be utterly intolerable in civilized society" before a bad faith cause of action could proceed in the face of the worker's compensation exclusivity. *Id.* at 685.

Based on the above analysis, the Defendants' request to dismiss Count VII must be granted. In said count, Gambito is essentially seeking damages for alleged delay in providing her medical benefits. The remedy for such claim lies with the Worker's Compensation scheme, but she has failed

---

[12] Similar to Gambito, the plaintiff in *Burlew* alleged she was injured at her workplace when she inhaled fumes. *Id.* She brought suit alleging the insurance carrier breached a duty owed to her to use reasonable care in timely deciding requests for authorization related to her medical care. *Id.*

to avail herself of those remedies.[13] There is no merit in the Plaintiffs' opposition argument that the exclusivity provision of the statute applies only to employers and does not extend to the insurance companies. The exclusivity of the worker's compensation remedy applies to the insurance carrier as well as the employer is supported by the language of the statute itself and by caselaw. The statute specifically states that if an employer is insured, then the definition of "employer" extends to the insurer. 22 GUAM CODE ANN. § 9103(j). And, to the extent that an insurance carrier is merely acting in the employer's stead in processing claims, it, too, may assert the defense of the exclusivity of the statutory remedies. *Burlew*, 472 N.E.2d at 684. Accordingly, the court recommends that the Chief Judge grant the motion to dismiss Count VII. Gambito must be required to exhaust her administrative remedies (*i.e.*, filing a claim) under the worker's compensation scheme. In order to avoid operation of the exclusivity procedure, the court should also allow Gambito to amend her complaint to include allegations that pursuing such administrative remedies would be futile or that the insurance provider's conduct rose to the level of being "so extreme and outrageous as to exceed all bounds of decency or to be utterly intolerable in civilized society" before a bad faith cause of action could proceed in the face of the worker's compensation exclusivity. *Id.* at 685.

## CONCLUSION

Based on the above analysis, the court recommends that the Chief Judge:

- **GRANT** the request to dismiss the Title VII claims from Count III and dismiss Count IV in its entirety since Defendant PCI is not an "employer" for Title VII purposes;

- **GRANT** the motion to dismiss Count VII but grant the Plaintiffs leave to amend (1) to permit Plaintiffs to bring claims against the proper Worker's Compensation insurance carrier if evidence is presented that First Net is the appropriate party and

---

[13] Under Guam's Worker's Compensation scheme, if an employer refuses or neglects an employee's request for medical services, the employee may procure those services at the employer's expense and may then apply to the WCC for an award for the reasonable value of the medical services. 22 GUAM CODE ANN. § 9108. If the employer fails to pay the award, the employee may apply to the WCC for a supplementary order declaring the amount in default, which the employee can file with the Superior Court to obtain a default judgment. 22 GUAM CODE ANN. § 9119. The employee may also seek to enforce any WCC compensation award through a writ of injunction from the Superior Court. 22 GUAM CODE ANN. § 9122(c).

not Moylan's Insurance and (2) to include allegations that pursuing administrative remedies available under Guam's Worker's Compensation law would be futile *after* she has filed an actual *claim* with the Guam Worker's Compensation Commission or that the insurance provider's conduct rose to the level of being "so extreme and outrageous as to exceed all bounds of decency or to be utterly intolerable in civilized society" before a bad faith cause of action could proceed in the face of the worker's compensation exclusivity provision; and

- allow the Plaintiffs to amend their Complaint to correct the defects in their jurisdictional allegations.



**/s/ Joaquin V.E. Manibusan, Jr.**
**U.S. Magistrate Judge**
**Dated: Dec 21, 2016**

### NOTICE

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge.  28 U.S.C. § 636(b)(1)(B).**