1
2
3
4
5
6                    **THE DISTRICT COURT OF GUAM**

7

8    JARRET HOGUE AND GELYN                    CIVIL CASE NO. 16-00041
     GAMBITO,

9                          Plaintiffs,         **DECISION AND ORDER ON**
                                               **DEFENDANTS' MOTION TO DISMISS**
10         vs.                                 **AND OBJECTIONS TO MAGISTRATE**
                                               **JUDGE'S REPORT AND**
11   PACIFIC COMPOSITES, INC. dba              **RECOMMENDATION**
     SHIPRIGHT! and BOATSHOP,
     AMANDA YOUNG, CHRISTOPHEAR
12   YOUNG, MOYLAN'S INSURANCE
     UNDERWRITERS, and, in her personal
13   capacity, JOANNALYN FULLERTON,

14                          Defendants.

15         Before the court is Defendant Pacific Composites, Inc. dba Shipright! and Boatshop

16   ("PCI"), Amanda Young ("Amanda"), Christophear Young ("Chris"), Moylan's Insurance, Inc.'s

17   ("Moylan's") (collectively "Defendants") Motion to Dismiss and Objection to Report and

18   Recommendation.[1]  *See* ECF Nos. 13 and 57.  After reviewing the parties' submissions, and

19   ─────────────────────

20         [1] The Motion to Dismiss had been referred to the Magistrate Judge.  *See* Order, ECF No. 35.  The
     Magistrate Judge's Report and Recommendation ("Report") recommends that this court (1) grant Defendants'
     motion to dismiss the Title VII claims from Counts III and dismiss Count IV in its entirety because PCI is not an
21   employer for Title VII purposes, (2) grant Defendants' motion to dismiss Count VII but permit leave to amend to
     allow Plaintiffs to bring claims against the proper worker's compensation insurance carrier and allege futility of
22   Guam's Worker's Compensation Program, (3) permit Plaintiffs to amend their Complaint to allege the insurance
     provider's conduct was sufficiently "extreme and outrageous" for bad faith purposes, and (4)  to allow Plaintiffs to
23   amend their Complaint to correct deficiencies in jurisdictional allegations.  *See* R. & R. at 19-20, ECF No. 56.

                                               1
24

relevant caselaw and authority, the court hereby **MODIFIES** in part and **ACCEPTS** in part the conclusions within the Report and **GRANTS** the Motion to Dismiss for the reasons stated herein.

## I.  BACKGROUND

### A.  Procedural History.

Plaintiffs Jarret Hogue ("Hogue") and Gelyne Gambito ("Gambito") (collectively "Plaintiffs") "each filed race, sex and national origin discrimination and retaliation complaints with the Equal Employment Opportunity Commission ("EEOC")" on January 11, 2016, and received "Right to Sue" letters on February 12, 2016.  Compl. at ¶ 56, ECF No. 1.  This action was filed on May 9, 2016, alleging the following claims:

Count I:  Hogue's Wrongful Discharge in Violation of Public Policy[;] . . .

Count II:  Gambito's Constructive Discharge in Violation of Public Policy[;] . . .

Count III: Race and National Origin Discrimination and Retaliation Against Hogue and Retaliation Against Gambito under Title,VII and 42 U.S.C. § 1981 by PCI and by [Chris and Amanda] . . .

Count IV: Title VII Discrimination and Retaliation Against Gambito on the Basis of Gender and Gambito's Engaging in Protected Activity[;] . . .

Count V - Wage and Hour Violations of Hogue's Rights Under Guam Law[;] . . .

Count VI - Wage and Hour Violations of Gambito's Rights Under Guam Law[;] . . .

Count VII - Gambito's Claim for Insurance Bad Faith Against Moylan's Insurance[; and] . . .

Count VIII - Gambito's Claim for Intentional Infliction of Emotional Distress Against Fullerton in her Personal Capacity.[2]

---

[2]  Defendant Joannalynn Fullerton was dismissed from this case with prejudice on September 13, 2016. *See* Order at 4, ECF No. 42.

*Id.* at 1, 12-19. According to the Complaint, this court has federal question subject matter jurisdiction over the claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and supplemental jurisdiction over the Guam law claims. *See id.* at ¶ 9.

On July 8, 2016, Defendants, with the exception of Fullerton, filed an Answer, denying any wrongdoing and asserting various affirmative defenses including lack of subject matter jurisdiction, lack of supplemental jurisdiction, failure to state a cause of action, and unclean hands. Answer at 1-3, ECF No. 12. That same day, Defendants moved to dismiss counts III, IV, and VII of the Complaint. *See* Mot. Dismiss at 1, ECF No. 13. Relying on evidence extrinsic to the Complaint, Defendants requested that the Motion be converted to one of summary judgment. *Id.* at 5. In the Motion, Defendants first argued that Plaintiffs' Title VII claims failed because PCI was not an employer for Title VII purposes as "it did not have at least 15 employees on its payroll for each working day of at least twenty weeks over the course of 2014 or 2015." *Id.* at 7. Second, Defendants contended that Count VII should be dismissed pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) for failure to exhaust administrative remedies. *Id.* at 8. Third, Defendants asserted that Moylan "should be dismissed from this action because it is not the insurance carrier" and because Guam's Workers Compensation laws bars Gambito's claim. *Id.* at 10-20.

Plaintiffs opposed the Motion on July 29, 2016. *See* Opp'n at 1, ECF No. 29. Plaintiffs conceded that the Title VII claim should be dismissed, but maintained that the 42 U.S.C. § 1981 claims should survive because section 1981 is not limited to employers with 15 or more employees. *See id.* at 3 (citation omitted). Additionally, Plaintiffs argued that there were no grounds to dismiss Count VII against Moylan's because the Guam law cited by Defendants

3

shields employers, not insurance carriers. *Id.* at 3. They also highlight that Guam courts have not "explicitly held that a Guam workers compensation insurance carrier is immune from a claim of bad faith for refusing to honor a claimants' rights to such a benefit." *Id.* at 4. The Opposition included ten exhibits in support. *Id.* at Ex. 1-10, ECF Nos. 29-1-10.

On August 12, 2016, the Defendants filed a Reply to the Plaintiffs' Opposition, emphasizing that because Plaintiffs did not dispute their Title VII claims, they should be dismissed. Reply at 1-2, ECF No. 32. Defendants also reiterated Gambito's failure to exhaust administrative remedies over her Workers Compensation claim, stressed that the bad faith claim was not exempt from the Workers Compensation Commission's ("WCC") exclusive jurisdiction, and underscored that "Gambito fails to allege and cannot allege any egregious cruelty or venality on the part of Moylan's." *Id.* at 1-3, 8 (citing *Sample v. Johnson*, 771 F.2d 1335, 1347 (9th Cir. 1985)). The Motion was referred to the Magistrate Judge on August 15, 2016. *See* Order, ECF No. 35.

At a scheduling conference held on August 15, 2016, Plaintiffs' counsel requested permission to file exhibits that should have been attached to his Opposition. *See* Am. Mins (Aug. 15, 2016), ECF No. 38. The Magistrate Judge granted the request and permitted the Defendants to file a supplemental reply if necessary. *Id.* Plaintiffs filed a Submission of Supplemental Exhibit and Declaration of John Richard Bordallo Bell ("Bell") on August 15, 2016, which included a "Comprehensive Internal Medicine Report." *See* Bell Decl. ¶ 2, ECF No. 37.

4

Defendants filed a Supplemental Reply on August 29, 2016, asserting that medical reports submitted by Plaintiffs do "not change the fact that Gambito failed to exhaust her administrative remedies." Supp. Reply at 1, 4, ECF No. 40.

On September 20, 2016, the parties came before the Magistrate Judge to present argument on the Motion to Dismiss. *See* Mins., ECF No. 44. The court took the motion under advisement but gave the parties until October 21, 2016, to file additional briefs addressing the court's exercise of supplemental jurisdiction over Count VII. *Id.*

On October 21, 2016, both parties filed their supplemental briefs as permitted. *See* ECF Nos. 45 and 47. In addition to addressing Count VII as instructed by the Magistrate Judge, Defendants contended that Counts V and VI do not arise out of the same case or controversy as Plaintiffs' section 1981 claim for employment discrimination sufficient for this court to exercise of supplemental jurisdiction. *See* Defs' Brief re Supp. Jurisdiction at 2, 5, ECF No. 45. They asserted Gambito's allegations supporting her claim of bad faith (Count VII) is directed at Moylan's only, and are unrelated to the section 1981 claims. *Id.* at 5. Likewise, they asserted that Counts V and VI of the Complaint, alleging wage and hourly violations under Guam's Fair Labor Standards Act, were unrelated to any asserted claims of employment discrimination. *Id.* at 6.

The Plaintiffs conceded that this court should not exercise supplemental jurisdiction over insurance bad faith claims if this court is conferred jurisdiction solely through federal question jurisdiction. Pl's Brief re Supp. Jurisdiction at 3, ECF No. 47. They asserted, however, that this court has original jurisdiction over state law claims because the requirements of diversity jurisdiction were satisfied. *Id.*

5

The Report was issued on December 21, 2016. *See* ECF No. 56. Defendants filed their Objection to the Report on January 4, 2017, and Plaintiffs filed their Response to Defendant's Objection on January 16, 2017. *See* ECF Nos. 57 and 62.

### B. Factual Background.

Plaintiffs are currently unmarried but have been living together in a committed relationship since 2009. Compl. at ¶ 3, ECF No. 1. Plaintiffs are "resident[s] of California and Guam currently residing in California." Compl. at ¶¶ 1-2. PCI is a maritime repair and supply shop incorporated under the laws of Guam, with its principal place of business in Guam. *Id.* at ¶ 4. Amanda is alleged to be both the President and an employee of PCI, and Chris is the "Secretary, Treasurer, Chief Operating Officer and an employee of PCI." *Id.* at ¶¶ 5-6.

Hogue, while living in California, began discussing employment at PCI with Chris in December 2013. *Id.* at ¶ 11. The negotiations continued over several months, and in May 2014, both Chris and Amanda offered Hogue a car while employed, as well as a sailboat to live on. *Id.* In late March 2015, Hogue agreed to relocate to Guam and agreed to terms of employment which supposedly included paying back half of approximately $1,600 in travel costs, a $12.50 hourly wage and indefinite use of the Youngs' vehicle. *Id.* at ¶ 15. Hogue arrived on Guam on April 12, 2015, and began working the following day. *Id.* at ¶ 16.

About a week later, the vehicle began breaking down. *Id.* at ¶ 17. Chris suggested that Hogue move to Agat so that Chris could drive Hogue to and from work every day, and Hogue agreed to do so. *Id.*

Keith Quintanilla, the shop manager, allegedly shunned Hogue from the start and purportedly told Hogue that his job should have gone to someone local. *Id.* at ¶¶ 14, 18. Hogue

informed Chris and also repeatedly asked Chris to talk to his employees about discrimination, but Chris allegedly took no action and told Hogue to "get used to it." *Id.* at ¶ 19.

Beginning in mid-April 2015, Hogue claims he worked 10 days straight with no day off and approximately 13-18 hours each day with no more than an hour break. *Id.* at ¶ 21. The Complaint also asserts that PCI deducted wages from all employees for a meal break regardless of whether the employee took a break. *Id.*

The Complaint states that for the first two weekly pay periods, Hogue was paid via a business check without any breakdown for taxes or other deductions. *Id.* at ¶ 22. Hogue estimated he should have been paid $2,650.00 if overtime was included, but claims he was denied approximately $1,275.00 in earned wages. *Id.* On May 7, 2015, Hogue negotiated a raise from $12.50 to $15.00 hourly. *Id.* at ¶ 24.

On or about June 15, 2016, Gambito began working at PCI as a sales associate for $10.00 per hour.. *Id.* at ¶ 27. The Complaint alleges that PCI paid Gambito "off the books" such that Gambito was denied approximately $500.00 in earned wages during her first month of employment. *Id.*

In mid-July 2015, Gambito allegedly worked three to four hours daily in addition to her regularly scheduled hours, but she was not compensated for this additional time. *Id.* at ¶ 29. Thereafter, PCI began to pay Gambito "on the books" as an hourly employee. *Id.* at ¶ 30. Amanda then gave Gambito management duties and the title of "Assistant Administrator," but without any increase in pay or a fixed salary. *Id.* Gambito objected and Amanda allegedly promised to revise Gambito's job description, but never did so. *Id.*

The Complaint asserts that Amanda told Gambito that she should have hired a local and

regretted hiring Hogue, a "statesider," because of his "stateside money grubbing vibe." *Id.* at ¶ 31. The Complaint alleges Amanda further stated that Hogue would not succeed at PCI because Hogue had "created waves." *Id.*

The Plaintiffs claim that they brought up several concerns about the safety of PCI's worksite during Friday meetings, but no progress was made. *Id.* at ¶28. Gambito made complaints about dust, dirt and fumes getting into the merchandise store, which was connected to the workshop. *Id.* at ¶¶ 33 and 37. Gambito claims the dust and fumes were so bad that she had to leave work early, and that she suffered migraines and vomiting when Chris insisted that she remain at work. *Id.* at ¶ 37. PCI allegedly refused to document any of these incidents. *Id.*

PCI employee Al Sizemore, allegedly mis-classified as an "independent contractor," began sexually harassing Gambito and told her about a sexual dream he had about her in July 2015. *Id.* at ¶ 35. The harassing comments continued into September 2015. *Id.* at ¶¶ 38-39. On September 28, 2015, Hogue notified Chris over the telephone about Sizemore's harassment of Gambito. *Id.* at ¶ 41. Chris remained silent. *Id.* The following day, Gambito gave her two-week notice to Amanda while they were both outside the Plaintiffs' home in Agat. *Id.*

On September 30, 2015, PCI gave Hogue a paycheck covering the period September 16-25 for 81.25 hours of work over the 9-day period without any overtime pay. *Id.* at ¶ 42. The following day, Hogue was fired by PCI "ostensibly due to PCI's 'rebranding, reorganization, and restructuring phase.'" *Id.* at ¶ 43. Gambito was also terminated on that day, allegedly based on the unprofessional manner in which she gave her two-week notice. *Id.* at ¶ 43.

On October 27, 2015, Plaintiffs both filed whistle-blower complaints with the federal Occupational Safety and Health Administration ("OSHA"). *Id.* at ¶ 44. An OSHA inspection

was conducted at the PCI worksite on November 15, 2015. *Id.* at ¶ 53.

Gambito filed and served PCI with a statutory notice of work injury on October 27, 2015. *Id.* ¶ 44. On October 29, 2016, Amanda allegedly met with Joannalyn Fullerton ("Fullerton"),[2] who advised Amanda to process the work injury claim with her insurance adjuster, Gina Valentine ("Valentine"), at Moylan's Insurance. *Id.* at ¶ 46. The Complaint alleges that Amanda, Fullerton and Moylan's Insurance have since conspired to "sweep [Gambito's] claim under the rug." *Id.*

The Complaint asserts that for the past five years, when employees suffering work injuries present their claims to Fullerton, she screams at them and/or refuses to process their claim in good faith. *Id.* at ¶¶ 47-51.

In December 2015 and January 2016, Valentine allegedly represented that Moylan's Insurance had no intention of processing Gambito's claim because Amanda Young refused to cooperate with the claims notification process. *Id.* at ¶ 54. Gambito thus sought her own evaluation and treatment in California. *Id.* Medical tests revealed "a cyst on Gambito's pineal gland . . . [despite no] . . . head injury during her lifetime." *Id.* (alterations in original). These medical reports also indicated that epoxy and other chemicals used at PCI may have caused nervous system damage and Gambito's headaches. *Id.* at ¶ 55.

## II. LEGAL STANDARDS

In reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). "[T]he court may accept, reject, or modify, in whole or in part, the findings

---

[2] Fullerton is the Guam Worker's Compensation Commission Administrator. Compl. at ¶ 8, ECF No. 1.

or recommendations made by the magistrate judge." *Id.*

**A. FRCP 12(b)(6) and 56.**

Because the Defendants rely on evidence outside the Complaint, pursuant to FRCP 12(d), the motion is converted to one for summary judgment under Rule 56.[3]

FRCP 12(b)(6) permits the dismissal of a claim for "failure to state a claim upon which relief can be granted." Review of a Rule 12(b)(6) motion is generally limited to the contents of the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). If matters outside the pleadings are considered by the court, the Rule 12(b)(6) motion is treated as one for summary judgment. *See Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir.1997). Courts may, however, "consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir.1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

[3] In its entirety, Rule 12(d) states: "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

10

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Pursuant to Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## B. FRCP 12(b)(1).

Defendants also seek dismissal of Count VII of the Complaint pursuant to Rule 12(b)(1) on the basis that Gambito failed to exhaust her administrative remedies.

Rule 12(b)(1) allows the court to dismiss a claim for lack of jurisdiction. "It is a fundamental principle that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Thus, the plaintiff bears the burden of establishing subject matter jurisdiction. Federal subject matter jurisdiction must exist at the time the action is commenced. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). A court must presume lack of jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (The party seeking to invoke federal court jurisdiction has the burden of establishing that jurisdiction is proper.).

A party bringing a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual"). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*

11

*v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating a facial attack to jurisdiction, the court must accept the factual allegations of the complaint as true. *See Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014). However, legal conclusions in the complaint are not accepted as true, even if they are cast as factual allegations. *See id.*

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. "With a factual Rule 12(b)(1) attack . . . a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. It also need not presume the truthfulness of the plaintiff['s] allegations." *White*, 227 F.3d at 1242 (internal citation omitted); *see also Thornhill Publishing v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.1979).

In the context of a motion to dismiss under Rule 12(b)(1), the court should dismiss without leave to amend if the party could not cure the jurisdictional defect by amendment. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Dismissal without leave to amend is improper "unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998) (quoting *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)).

### III. DISCUSSION

The Magistrate Judge's Report recommends that this court:

- **GRANT** the request to dismiss the Title VII claims from Count III and dismiss Count IV in its entirety since Defendant PCI is not an "employer" for Title VII purposes;

- **GRANT** the motion to dismiss Count VII but grant the Plaintiffs leave to amend to permit Plaintiffs to bring claims against the proper Worker's

12

Compensation insurance carrier if evidence is presented that First Net is the appropriate party and not Moylan's Insurance and (2) to include allegations that pursuing administrative remedies available under Guam's Worker's Compensation law would be futile *after* she has filed an actual *claim* with the Guam Worker's Compensation Commission or that the insurance provider's conduct rose to the level of being "so extreme and outrageous as to exceed all bounds of decency or to be utterly intolerable in civilized society" before a bad faith cause of action could proceed in the face of the worker's compensation exclusivity provision; and

- allow the Plaintiffs to amend their Complaint to correct the defects in their jurisdictional allegations.

R. & R. at 19-20, ECF No. 56.

Defendants filed an Objection to the Report, which first contends that Gambito should not be permitted to amend Count VII to allege futility of exhausting administrative remedies. Obj. to R. & R. at 1-2, ECF No. 57. Gambito filed a Form GWC-203 with the WCC and a formal hearing on the matter will be heard in April of 2017. Obj. to R. & R. at 1-2, ECF No. 57; *see also* Georgette Bello Concepcion ("Concepcion") Decl. at ¶¶ 4-7, Ex. A (GWC-203), ECF No. 58-1. In Defendants' view, "[t]he fact that the WCC has set this matter for formal hearing in April 2017 refutes and defeats all of Gambito's arguments as the issue of futility in exhausting her administrative remedies." *See* Obj. to R. & R. at 2, ECF No. 57. Second, "Defendants object to the [Report's] recommendation that Gambito be allowed to amend her complaint to allege egregious cruelty or venality by the carrier" because her bad faith claim cannot be saved by amendment. *Id.* at 3. They assert that correspondence supplied by Plaintiffs in support of their Opposition do not demonstrate conduct "so outrageous as to shock the conscious." *Id.* (citing Bell Decl. in Supp Opp'n at Ex. 7, ECF No. 29-7). There, Valentine stated to Plaintiff's counsel the following: "[a]s you may know before we open up a file the employer must first submit a claim and file WC 202 which in this case did not happen," but that she would be "more than

13

happy to sit down with you to discuss your client's claim but as a matter of procedure I have to advise the employer so that the latter can file the necessary WCC 202." *Id.* Third, PCI Defendants contend that Moylan's should be dismissed because it is not the insurance carrier. *Id.* (citing Concepcion Dec. at Ex. D (Policy No. AGA-WCA00-13252, Nov. 6, 2015) and Ex. E. (Policy No. 632345-632345, March 12, 2015), ECF No. 58-4-5. Finally, Defendants assert it would be futile to allow Plaintiffs to amend their Complaint to assert diversity jurisdiction because two or more plaintiffs cannot aggregate their claims to satisfy the jurisdictional amount requirement. *Id.* (quoting *Alinsub v. T-Mobile*, 414 F. Supp. 2d 825, 828 (W.D. Tenn. 2006)).

In Response, Plaintiffs argue that they "should be permitted to amend their Complaint to show either that further exhaustion of administrative remedies is futile or that the insurance provider's conduct rose to the level of being so extreme and outrageous as to exceed all bounds of decency or to be utterly intolerable in civilized society." Response to Obj. to R. & R. at 2, ECF No. 62 (emphasis and quotation marks omitted). They assert that it is immaterial that a hearing was set and the case appears to be moving forward because Fullerton is biased against Gambito. *Id.* This is problematic, in their view, because Fullerton "controls the outcome of any hearing which may be eventually had." *Id.* Plaintiffs maintain they can prove that "Fullerton colludes with insurance adjusters and their attorneys against claimants in order to deny claimants; due process rights." *Id.* at 3. Additionally, they argue that the WCC statute penalty provisions are insufficient to address delayed payments for medical care rather than disability payments. *Id.* They also contend that Moylan's is not insulated from liability because Defendants have not set forth records that address coverage during the period Gambito worked at PCI. *Id.* at 4. Finally, Plaintiffs stress that they can satisfy the amount-in-controversy

14

requirement because their section 1981 claims can individually yield in excess of $75,000.00. *Id.* at 7.

**A. Gambito has Failed to Exhaust Administrative Remedies.**

Defendants' Motion to Dismiss contends that Count VII "against Moylan's is barred as the Guam [WCC] has exclusive jurisdiction over such a claim." Mot. Dismiss at 11, ECF No. 13. They assert that Gambito did not exhaust her administrative remedies in this case, thus depriving this court of subject matter jurisdiction over the claim. *Id.* The Report recommended that this court dismiss Count VII, but permit Gambito to amend her Complaint "to include allegations that pursuing administrative remedies available under Guam's [w]orker's [c]ompensation law would be futile after she has filed an actual claim with the [WCC]." R. & R. at 20, ECF No. 56 (emphasis omitted).

The exclusivity provision of Guam's worker's compensation law states, in pertinent part:

> **The liability of an employer prescribed in § 9104[4] shall be exclusive and in place of all other liability of such employer[5] to the employee,** . . . provided that, if an employer fails to secure payment of compensation as required by this Title, an injured employee or his legal representative, in case death results from the injury, any elect to claim compensation under this Title, or to maintain an action at law or in admiralty for damages on account of such injury or death. . . .

22 G.C.A. § 9106 (emphasis added). The WCC is vested with jurisdiction to investigate a failure to make payments. 22 G.C.A. § 9115(h). Guam's worker's compensation scheme requires an injured employee to give "[n]otice of an injury . . . for which compensation is payable . . . within thirty (30) days after the date of such injury . . . (1) to the Commissioner and (2) to the

---

[4] Section 9104 states, in part, that "[c]ompensation shall be payable under this Title in case of disability or death of an employee, but only if the disability or death results from an injury sustained while engaged in industrial employment or public employment or both as defined in § 9103." 22 G.C.A. § 9104.

[5] The definition of "employer" includes the employer's insurer. *See* 22 G.C.A. § 9103(j).

15

employer." 22 G.C.A. § 9113(a).[6]  Such claim shall be filed with the Commissioner. *Id.* "Compensation under this Title shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer." 22 G.C.A. § 9115(a).  "The Commissioner shall have full power and authority to hear and determine all questions in respect to such claim."  22 G.C.A. § 9120(a).

The Report noted that Gambito did not file a claim with the WCC, and that the Form 201 notice that she did file "'does not tell the WCC what exactly it is [Gambito] is claiming."  *See* R. & R. at 14, ECF No. 56 (alteration in original) (citing Reply at 2, ECF No. 32); *see also* Opp'n at Ex. 1, ECF No. 29-1 (stating "** **THIS IS NOT A CLAIM** **").  Consequently, Guam worker's compensation law requires Gambito to file a claim before she is entitled to compensation.  *See id.* at 16.

A district court is bound by the decisions of a state's highest court when analyzing questions of state law.  *Glendale Associates, Ltd. v. N.L.R.B.*, 347 F.3d 1145, 1154 (9th Cir. 2003) (citation omitted).  The Supreme Court of Guam has addressed the issue of "whether the exclusivity provision of Guam's worker's compensation law bars tort claims at law arising out of an alleged failure to provide medical care as required by the law."  *Amerault v. Intelcom Support Servs., Inc.*, 2004 Guam 23 ¶ 10 (citations omitted).  Specifically, it "has articulated the continued viability of the exclusivity provision, stating that '[i]f the employer has obtained the coverage prescribed by the statute then *the liability of the employer for compensation is exclusive and in place of all other liability* of such employer to the employee.'"  *Id.*  (alteration and

---

[6] An employee's "right of compensation for disability . . . under this Title shall be barred unless a claim therefor is filed within one (1) year after medical knowledge of disability . . . . The time for filing a claim shall not begin to run until the employee or beneficiary becomes aware of the relationship between the injury or death and the employment." 22 G.C.A. § 9114(a).

emphasis in original) (quoting *Villalon v. Hawaiian Rock Prods., Inc.*, 2001 Guam 5 ¶ 10); *see also Bondoc v. Worker's Comp. Comm'n*, 2000 Guam 6 ¶ 34 ("The law is crystalline that under these sections, [plaintiff] is an employee for the purpose of worker's compensation and may not seek relief elsewhere. . . ." (quoting *Frieze v. Sandcastle, Inc.*, CV0139–94, p. 4 (Sup. Ct. Guam, Aug. 1, 1994))).

In light of Guam's exclusivity provision, the Report correctly concluded Gambito's failure to exhaust her administrative remedies[7] through filing a claim with the WCC requires that Count VII be dismissed. *See* R. & R. at 19, ECF No. 56. This court must now consider Defendants' Objection to the Report challenging the Report's recommendation that Plaintiffs be afforded leave to amend the Complaint to (1) allege futility of filing a claim with the WCC, and/or (2) "intentional wrongdoing or conduct 'so extreme and outrageous as to exceed all bounds of decency." *See id.*; *see also Amerault*, 2004 Guam 23 ¶¶ 6, 10 n.4-5.

### 1. Granting Leave to Amend is Inappropriate because Gambito has filed a Claim with the WCC and her Allegations of Futility are Speculative.

Defendants assert an amendment to allege futility is improper because Gambito filed a Form GWC-203 claim with the WCC shortly after the hearing before the Magistrate Judge. *See* Concepcion Decl. at ¶ 3, Ex. A (Form GWC-203, Sept. 21, 2016), ECF No. 58-1. Thereafter, First Net Insurance Company filed a Form GWC-207 with the WCC on October 13, 2016, to controvert the claim. *Id.* at Ex. B (Form GWC-207, Oct. 13, 2016), ECF No. 58-2. The parties

---

[7] The Supreme Court of Guam has explained the reasoning behind the exhaustion of administrative remedies doctrine. *Carlson v. Perez*, 2007 Guam 6 ¶ 69.[7] "The basic purpose . . . is to lighten the burden of overworked courts in cases where administrative remedies are available. *Id.* (citation and internal quotation marks omitted). The second justification offered by the court was "that even where the administrative remedy may not provide the specific relief sought by a party or resolve all the issues, exhaustion is preferred because agencies have the specialized personnel, experience and expertise to unearth relevant evidence and provide a record which a court may review." *Id.* (footnote and citation omitted).

met for an informal hearing at the WCC on October 25, 2016, and on October 28, 2016, the WCC sent the parties notice that a formal hearing would be set for April of 2017. *Id.* at ¶ 5, Ex. C ((Guam Department of Labor Letter, Oct. 28, 2016), ECF No. 58-3). Because the matter will be set for a formal hearing before the WCC in April of 2017, Defendants argue that Gambito's arguments regarding futility are without merit. Obj. to R. & R. at 2, ECF No. 57.

In response, Plaintiffs conclusively aver that "it does not matter if things *appear* to be 'moving along' at the WCC if Fullerton[8] is [biased] against Gambito and yet controls the outcome of any hearing which may eventually be had, and where the WCC lacks meaningful due process." Response to R. & R. at 2, ECF No. 62. They assert that they did not go into factual detail in their Complaint because "the evidence explaining the futility of pursuing such a remedy is so *voluminous*." *Id.* at 3. To support this purported futility, Plaintiffs' counsel indicates he propounded a Freedom of Information Act ("FOIA") "in the last couple of years." *Id.* Without quoting any text, Plaintiffs assert that Fullerton "colludes (sometimes secretly) with insurance adjusters and their attorneys against claimants in order to deny claimants' due process rights." *Id.* To support this conclusive allegation, Plaintiffs generically cite to hundreds of pages within Exhibits 1-12 attached to Bell's Declaration, without providing any specific bias against Gambito. *See id.* (citing Bell Decl. at Ex. 1-12, ECF No. 62-62-5).

"In considering a motion to dismiss for failure of jurisdiction, the district court may not deem '[a]dministrative review . . . futile if the plaintiff's allegations of bias are purely

---

[8] Plaintiff presented evidence that Fullerton "did not accept the GWC 201 (the employee's notice of injury) for filing" because "it was not accompanied with a GWC 202 (the employer's notice of injury)." Opp'n at Ex. 6 (Fullerton Decl. ¶ 4), ECF No. 29-6. Fullerton further stated that "[s]ince [she] began working at the Department of Labor, [she had] been told that [WCC] should not accept for filing a GWC 201 that is not accompanied by a GWC 202. There is no written instruction as to when to accept filings or what to do with them once filed." *Id.* Fullerton's belief about the WCC's procedure does not support an allegation of specific bias against Gambito.

speculative.'" *Anderson v. Babbitt*, 230 F.3d 1158, 1164 (9th Cir. 2000) (quoting *Joint Bd. of Control of Flathead, Mission & Jocko Irr. Districts v. United States*, 862 F.2d 195, 200 (9th Cir. 1988)).[9] Thus, there must be "'objective and undisputed evidence'" that the administrative body is biased against Gambito. *Id.*

The United States District Court for the District of Hawaii noted that the fact that a body is "'likely to rule against the [grievant] on the merits" is insufficient to support an allegation of futility. *Debeikes v. Hawaiian Airlines, Inc.*, 141 F. Supp. 3d 1075, 1092 (D. Haw. 2015) (quoting *Addington v. US Airline Pilots Ass'n*, 588 F.Supp.2d 1051, 1063–64 (D. Ariz. 2008) (alteration in original) (futility doctrine was inapplicable to plaintiff's generalized claims of futility in the collective bargaining agreement context)). The District of Hawaii court further stated that "[f]utility is also generally inapplicable where 'the plaintiff never puts his futility theory to the test by filing a protest.'" *Id.* (quoting *Hawaii Teamsters & Allied Workers, Local 996, IBT v. City Exp., Inc.*, 751 F. Supp. 1426, 1432 (D. Haw. 1990) (citations omitted)); *see also Joint Bd. of Control*, 862 F.2d at 200 (9th Cir. 1988) ("[T]he futility exception to the exhaustion requirement should not be applied where the agency has not had an opportunity to develop a record" because "the purposes underlying the exhaustion doctrine include the opportunity for the *agency* to exercise its discretion and expertise and the opportunity to make a record for the district court to review." (quoting *In re Steele*, 799 F.2d 461, 466 (9th Cir.1986)))).[10]

---

[9] "[U]nsupported allegations of futility will not sustain the futility exception to the exhaustion requirement. *Grenell v. UPS Health & Welfare Package*, 390 F. Supp. 2d 932, 935 (C.D. Cal. 2005) (citing *Diaz v. United Agr. Employee Welfare Ben. Plan & Trust*, 50 F.3d 1478, 1485 (9th Cir. 1995) ("bare assertions of futility are insufficient to bring a claim within the futility exception")*; see also Zhou v. Guardian Life Ins. Co. of Am.,* 295 F.3d 677, 680 (7th Cir.2002) ( "When a party has proffered no facts indicating that the review procedure that he initiated will not work, the futility exception does not apply.")).

[10] In the pension plan review context, the United States Court of Appeals for the District of Columbia noted

Here, Plaintiffs' suspicion that the WCC may rule against Gambito is insufficient to support a finding of futility. Gambito has filed her claim, and the evidence on the record shows that hearing will occur shortly. Additionally, even though Plaintiffs point to other parties who had unsatisfactory experiences with the WCC, it would be speculative for this court to conclude that the administrative process would fail Gambito. *See Diaz*, 50 F.3d at 1486 (determining district court did not abuse its discretion in "refusing to recognize an exception to the exhaustion doctrine" where "the record contains nothing but speculation to suggest that the administrators would have reached a preconceived result." (footnote omitted)). Plaintiffs' generalized allegation of the WCC's "collusion" with adjusters and counsel does not demonstrate any bias against Gambito.

Due to Guam's exclusivity provision and policy in favor of exhaustion of administrative remedies, Count VII should be dismissed so that Gambito's claim can go through the WCC process. At this time, her assertions of futility are premature and speculative. If she is unhappy with the results of her claim before the WCC or PCI's conduct following the proceedings, then she can follow the appropriate procedures for appeal set forth in Guam law.[11] Therefore, the Report's conclusion that Gambito be allowed to amend her Complaint to assert futility of exhausting administrative remedies is **MODIFIED** because she must first test the WCC process

---

that "[e]ven if one were to concede that an unfavorable decision from the Benefits Committee was *highly likely,* that does not satisfy our strict futility standard requiring a *certainty* of an adverse decision." *Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*, 40 F.3d 426, 433 (D.C. Cir. 1994)

[11] Under Guam's worker's compensation scheme, if an employer refuses or neglects an employee's request for medical services, the employee may procure those services at the employer's expense and may then apply to the WCC for an award for the reasonable value of the medical services. 22 GCA § 9108. If the employer fails to pay the award, the employee may apply to the WCC for a supplementary order declaring the amount in default, which the employee can file with the Superior Court to obtain a default judgment. 22 GCA § 9119. The employee may also seek to enforce any WCC compensation award through a writ of injunction from the Superior Court of Guam. 22 GCA§ 9122(c).

before asserting futility.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (a district court has discretion to deny leave to amend if doing so would be futile); *see also* R. & R. at 19-20, ECF No. 56.

### 2. The Insurance Provider did not Engage in Extreme and Outrageous Conduct.

A plaintiff may avoid the operation of an exclusivity of remedies provision in the worker's compensation context if an insurance provider acted intentionally.  *See Amerault*, 2004 Guam 23 ¶ 10 n.5.  "[T]he term 'intentional' is construed very strictly where a workers' compensation statute exists.  *Sample*, 771 F.2d at 1346.  The Ninth Circuit, quoting Professor Larson, 2A Larson *Workmen's Compensation Law* § 68.13 at 13–76 (1984), has acknowledged that:

> The temptation to shatter the exclusiveness principle by reaching for the tort weapon whenever there is a delay in payments or a termination of treatment is all too obvious, and awareness of this possibility has undoubtedly been one reason for the reluctance of courts to recognize this tort *except in cases of egregious cruelty or venality.*

*Id.* at 1347.  To meet the intentional standard, the Plaintiff must show that the "carrier's attempt to disprove plaintiff's claim was so extreme and outrageous as to exceed all bounds of decency or to be utterly intolerable in civilized society."  *See Burlew v. Am. Mut. Ins. Co.*, 63 N.Y.2d 412, 417 (N.Y. 1984) (citations omitted).[12]

---

[12] Guam courts consider cases interpreting statutes similar to Guam to be persuasive, and :

> Guam's worker's compensation laws are substantially similar to the federal Longshore and Harbor Workers' Compensation Act ("LHWCA") which itself was modeled after the New York statutory scheme regarding workers' compensation. *Spencer-Kellogg & Sons, Inc. v. Willard*, 190 F.2d 830, 832 n.1 (3rd Cir. 1951). Therefore, we consider case law interpreting provisions of the LHWCA that are similar to provisions of Guam's worker's compensation law similarly persuasive.

*Amerault*, 2004 Guam 23 ¶ 16 (citing *Gibbs v. Holmes*, 2001 Guam 11 ¶ 15).

In *Burlew*, the Plaintiff was injured when she inhaled fumes at her place of employment. *Id.* at 415. She began receiving worker's compensation benefits from her employer's insurance carrier, and her physician determined surgery was necessary to correct a condition related to her industrial illness. *Id.* Four or five months passed before the date that the doctor sought authorization from the defendant insurance carrier before the request was granted. *Id.* Plaintiff then brought a bad faith claim against the defendant insurance carrier. *Id.* To support the allegation, plaintiff described an occasion where "one of defendant's agents came to her home while she was awaiting the authorization and, in the course of the interview, yelled[:] . . . :'You're crazy if you think we're going to support you for the rest of your life.'" *Id.* The defendant also procured an affidavit purporting to opine that the condition was due to pre-existing injury. *Id.* The court determined these occurrences did not amount to bad faith because they were not "so extreme and outrageous as to exceed all bounds of decency or to be utterly intolerable in civilized society," affirming a grant of the insurer's motion to dismiss. *Id.* at 417-18.

In *Penn v. Standard Acc. Ins. Co.*, a plaintiff's right leg was injured while employed by an employer insured by the defendant insurance company. 4 A.D.2d 796, 796-77 (N.Y. App. Div. 1957). The plaintiff then injured his left leg, which he alleged was a result of the weakness of the right leg caused by the first accident. *Id.* at 796. The employer and insurance carrier disputed this, and refused to pay the hospital bills. *Id.* Ultimately, the leg required amputation. *Id.* at 796-77. The court determined that "[t]he defendant was under no duty to pay the hospital bill for the injury to the left leg u*ntil there was an adjudication of its causal connection with the*

*compensable accident*." *Id.* at 797 (emphasis added). Additionally, the plaintiff's remedies against the insurance carrier and employer were "solely under the Workmen's Compensation Law" because the only wrongdoing alleged was failure to "perform promptly its obligation under its insurance policy." *Id.*

Defendants are correct that correspondence supplied by Plaintiffs in support of their Opposition do not demonstrate conduct "so outrageous as to shock the conscience." *See* Obj. to R. & R. at 3, ECF No. 57 (citing Bell Decl. in Supp. Opp'n at Ex. 7, ECF No. 29-7). Ms. Valentine merely states "[a]s you may know before we open up a file the employer must first submit a claim and file WC 202 which in this case did not happen," but that she would be "more than happy to sit down with you to discuss your client's claim but as a matter of procedure I have to advise the employer so that the latter can file the necessary WCC 202." *Id.* Waiting for an employer to file a form does not "shock the conscience," and Valentine's statements are mild compared to those in *Burlew*, 63 N.Y.2d at 416. Likewise, Valentine's "non-response" to Bell's lengthy email describing his clients' legal position could not be characterized as "outrageous." *See* Response to Obj. to R. & R. at 3-4, ECF No. 62 (citing Bell Decl. at Ex. 6 (Email Correspondence), ECF No. 62-1). Although Plaintiffs are dismayed that there was no response to their counsel's email, they have pointed to no authority where the court determined parallel conduct was sufficiently outrageous as to be intolerable by civilized society.

The court determines that the conduct within the email correspondence supplied by Plaintiffs is insufficient, as a matter of law, to show conduct "so outrageous as to shock the conscience." *See* Bell Decl. at Ex. 6, ECF No. 62-1; *see also* Bell Decl. in Supp. Opp'n at Ex. 7,

ECF No. 29-7. As in *Penn*, Plaintiffs' remedies for failure to perform promptly on an insurance policy obligation are solely within the scheme of worker's compensation law. 4 A.D.2d at 797.

The court has converted the motion to dismiss to one of summary judgment, and has considered extensive evidence presented by both parties. *See Adrian Scott Morgan v. County of Los Angeles,, et al.*, No. 211CV06227ODWAGRX, 2012 WL 12887397, at *4 (C.D. Cal. Mar. 26, 2012) (noting that a motion to amend was moot where the court converted a motion to dismiss into a motion for summary judgment).[13] Therefore, the Report's conclusion that Gambito amend her Complaint to assert that the insurance provider's conduct rose to the level of being "so extreme and outrageous as to exceed all bounds of decency or to be utterly intolerable in civilized society" for purposes of proceeding in the face of the worker's compensation exclusivity provision is **MODIFIED.** Leave to amend Count VII is unwarranted because the extensive evidence presented regarding Moylan's actions does not rise to extreme and outrageous conduct. Consequently, Count VII is **DISMISSED** without leave to amend.

**B. Dismissal of Moylan's Insurance.**

Defendants assert that "Moylan's should be dismissed as it is not the insurance carrier." Obj. to R. & R. at 4, ECF No. 57. As Count VII has been dismissed, this argument is **MOOT**, as is the argument that supplemental jurisdiction should be declined over Count VII.

**C. Supplemental and Diversity Jurisdiction.**

The question remains as to whether there is diversity jurisdiction over Plaintiff's other state law claims. A "district court[] shall have original jurisdiction of all civil actions where the

---

[13] Additionally, Plaintiffs have not moved to amend their Complaint other than a short request within their opposition, and have not submitted a proposed Amended Complaint as required by Civil Local Rule 15. *See* Opp'n at 5, ECF No. 29.

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . .citizens of different States." *See* 28 U.S.C.A. § 1332.

### 1. Diversity of Citizenship.

"[T]he diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A natural person must be a citizen of the United States to be a citizen of a state. *Id.* (citing *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 828 (1989). The persons citizenship determined by the state of domicile rather than the state of residence. *Id.* "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* (citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir.1986)). A "party asserting diversity jurisdiction bears the burden of proof." *Id.* at 857-58 (citation omitted).

Here, the Complaint asserts that Plaintiffs are "resident[s] of California and Guam, currently residing in California." *See* Compl. at ¶¶ 1-2, ECF No. 1. When a party alleges residency rather than diversity of citizenship, it is appropriate to give a plaintiff leave to amend their complaint to cure the jurisdictional defect. *See Swensen v. McDaniel*, 119 F. Supp. 152, 159 (D. Nev. 1953). Therefore, the Report correctly concluded that Plaintiffs should be granted leave to amend to assert diversity of citizenship rather than residence if they can in good faith allege that California rather than Guam is their domicile. *See* R. & R. at 10, ECF No. 56.

### 2. Amount-in-Controversy.

Defendants argue that Plaintiffs cannot satisfy the amount in controversy requirement individually. Obj. to R. & R. at 4, ECF No. 57. Plaintiffs counter that they can each satisfy the amount in controversy requirement because 42 U.S.C. § 1981 permits both compensatory and

25

punitive damages. Response to R. & R. at 7, ECF No. 62. In their Brief regarding Supplemental Jurisdiction, Plaintiffs asserted that their "initial disclosures calculating [combined] back-pay alone as of that date to be $92,910.00. Pl's Brief re Supp. Jurisdiction at 2, ECF No. 47. In Plaintiffs' initial disclosures, they allege that "Hogue's back-pay from the time of this termination to the time of trial, based on a fulltime hourly rate of $15.00 per hour, is estimated at $44,050." Pl's Brief re Supp. Jurisdiction at Ex. 2, ECF No. 47-3. As to Gambito, the initial disclosures state that her ""back-pay from the time of her termination to the time of trial, based on a fulltime hourly rate of $16.00 per hour, is estimated as $48,860.00." *Id.* Plaintiffs also claim "attorneys' fees as well as compensatory and punitive damages [to] be proved at trial." *Id.* The Civil Cover sheet affixed to their Complaint demands $500,000.00. *See* ECF No. 1-1.

"The traditional rule is that multiple plaintiffs who assert separate and distinct claims are precluded from aggregating them to satisfy the amount in controversy requirement." *Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013) (citation omitted). Consequently, Defendants are correct that Plaintiffs cannot aggregate the claims together to satisfy the amount-in-controversy requirement of $75,000.00.

Aggregation of claims, however, permits a court to aggregate federal and state claims. *See Hunter v. United Van Lines*, 746 F.2d 635, 650 (9th Cir. 1984). In such cases, "the combined amount of the claims meets the federal jurisdictional standard." *Id.* A single plaintiff is permitted to "aggregate as many claims as he has against a single diverse defendant in order to meet the jurisdictional amount, even if no single claim reaches that amount." *Id.* (citations omitted). Likewise, "the right of aggregation exists even when one claim is based on diversity of citizenship and one or more on the presence of a federal question." *Id.* (citations omitted).

26

Under Guam law, treble damages are available for unpaid wages. *See* 22 G.C.A. § 3219. Additionally, an employer who fails to pay overtime "shall pay all attorney's fees and costs necessary to collect such amounts." 22 G.C.A. § 3218; *see also* 22 G.C.A. § 3117 ("The court in such action shall . . . allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action.")

In this case, the Complaint asserts that Hogue worked at PCI from April 13, 2015 through approximately October 1, 2015. *See* Compl. at ¶¶ 16, 42-43, ECF No. 1. Initially, he made $12.50 hourly, and his pay was increased to $15.00 on May 7, 2015. *Id.* at ¶¶ 15, 24. He claims that on some days in April, he worked thirteen to eighteen hour days, but does not specify the over-time period beyond that period. *Id.* at ¶ 21. As to Gambito, she began working at PCI on or about June 15, 2016, for $10.00 per hour. *Id.* at ¶ 27. Beginning in mid-July of 2015, the Complaint asserts she worked an additional three to four hours beyond her scheduled and paid hours. *Id.* at ¶ 29. Gambito's pay was not increased to $16.00 per hour until September 16, 2015, and she was terminated on or about October 1, 2015. *Id.* at ¶¶ 40, 43.

Due to the brief duration of their employment, it appears unlikely the amount of unpaid wages and overtime alleged in the Complaint for Hogue and Gambito individually could satisfy the amount-in-controversy requirement. Nonetheless, the court cannot say that it would be impossible for the state law claims to satisfy the amount-in-controversy requirement if aggregating with the potential for compensatory and punitive damages available for 42 U.S.C. § 1981 claims. *See Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 777-77 (9th Cir. 2005) (noting that compensatory and punitive damages are available under certain circumstances for section 1981 claims).

Therefore, this court **ADOPTS** Report's the conclusion that Plaintiffs be given leave to amend to cure jurisdictional defects. Plaintiffs may amend their Complaint to allege that the amount of unpaid wages in conjunction with the compensatory and punitive damages anticipated from the section 1981 claims in Counts III and IV, combined with the unpaid wages claims in Counts V and VI, are in excess of $75,000.00

## IV. CONCLUSION

For the foregoing reasons, the court hereby **ACCEPTS** in part and **MODIFIES** in part the Magistrate Judge's recommendations within the Report to **GRANT** Defendants' Motion to Dismiss the Title VII counts in Count III, Count IV in its entirety, and Count VII. Plaintiffs are permitted leave to amend Counts V through VI. Specifically, this court

- **ACCEPTS** the Report's conclusions that this court **DISMISS** Plaintiffs' Title VII claims from Count III and to dismiss Count IV in its entirety because PCI is not an "employer" for Title VII purposes';

- **ACCEPTS** the Report's recommendation to **DISMISS** Count VII, but **MODIFIES** the Report's conclusion that Plaintiffs' should be afforded leave to amend Count VII because doing so would be futile; and

- **ACCEPTS** the recommendation that Plaintiffs should be granted leave to amend their Complaint to correct the defects in their jurisdictional allegations for Counts V and VI.

Plaintiffs' Amended Complaint shall be filed within 21 days of this Order, and should omit Counts IV, VII, and reference to Title VII.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
28 **Chief Judge**
**Dated: Mar 31, 2017**